GEORGE A. MARION et al.

v.

ROYAL W. WOLCOTT.

[Filed November 12th, 1904.]

1. Under a contract for the sale of land the equitable beneficial interest passes to the vendee and he becomes, in the contemplation of equity, the real owner. He takes the benefit of all subsequent improvements and increase of value, but he will also be subject to all losses and depreciations not occasioned by the neglect or default of the vendor in carrying out the contract.

2. Where a contract for the sale of land required the vendee to insure the buildings against fire, the policy to be delivered to and held by the vendor, as his interest may appear, such loss, to the extent of the vendor's interest, was payable to him, to be applied on the unpaid purchase-price, and not for the purpose of rebuilding destroyed buildings.

On bill, answer, replication and proofs.

*Mr. John P. Stockton*, for the complainant.

*Mr. William L. Clark*, for the defendant.

MAGIE, CHANCELLOR.

This cause was brought to hearing on bill, answer, replication and proofs.

It appears thereby that defendant, being the owner of a house and lot in Passaic county, on January 1st, 1891, made an agreement in writing for the sale and conveyance thereof to complainants, and complainants agreed thereby to purchase the same. The price was fixed at $1,550; $60 was to be paid down on signing the agreement, and $5 on the first day of each month thereafter, with interest, at six per cent., on the principal remaining unpaid. When all payments had been made the defendant was to convey to complainants the house

and lot by deed, with warranty and full covenants. By that agreement the complainants contracted to

"insure the buildings against fire in a responsible fire insurance company in the sum of not less than six hundred and twenty-five dollars, and the policy of insurance is to be delivered and held by the party of the first part, and loss by fire in his favor or as his interest may appear."

It further appeared that on October 1st, 1893, complainants procured a policy of insurance upon the house for $650, running for three years, and by its terms any loss thereunder was payable to defendant. When that policy expired, in October, 1896, complainants took no steps for renewing the insurance, as required by their contract. The agent of the insurance company, however, without instructions from complainants, made out a new policy in the same company, which he sent to defendant. It was returned to the agent as "not wanted." The reason for its return was that defendant had, before that time, taken out a blanket insurance upon a number of properties, including that in question, at his own expense.

It also appears that complainants made the required down payment, and the monthly payments thereafter of principal and interest, up to October 1st, 1897; that they went into possession and made improvements upon the lot, and that while in possession the house was totally destroyed by fire, without fault of complainants, on July 9th, 1897.

Defendant afterward collected of the company which had issued his blanket policy $625 for the loss by fire of the house in question. Complainants thereafter made a written demand that defendant should pay them the $625 so received, or that he should rebuild the destroyed house. This demand was refused, but defendant gave credit to complainants for the $625 as received on the purchase-price named in the contract.

The prayer of the bill is for a decree that the defendant pay to complainants the $625, with interest, or that he be directed to rebuild the house and specifically perform the contract, and that in decreeing specific performance complainants should be awarded compensation for the diminished value of the property and the inconvenience resulting from defendant's refusal to

rebuild, or should be awarded the insurance money as such compensation.

It is the settled doctrine of our courts of equity that under a contract for the sale of lands the purchaser becomes the equitable owner of the lands and the seller the equitable owner of the purchase-money: *King* v. *Ruckman, 21 N. J. Eq. (6 C. E. Gr.) 599; Haughwout* v. *Murphy, 22 N. J. Eq. (7 C. E. Gr.) 531; Schmidt* v. *Opie, 33 N. J. Eq. (6 Stew.) 138.*

It is also declared to be the doctrine of equity that when under such a contract of sale the equitable beneficial interest passes to the buyer and he becomes in the contemplation of equity the real owner, he takes the benefit of all subsequent improvements and increase of value, but he will also be subject to all losses and depreciations not occasioned by the neglect or default of the seller in carrying out the contract. *Pom. Spec. Perf.* § *522; Fry Spec. Perf.* §§ *895–897; Pom. Eq. Jur.* §§ *368, 1406.*

The doctrine last mentioned is obviously a mere corollary to that above stated, which has been asserted in our courts in the cases above cited and in numerous others.

Applying that doctrine to the facts of this case, it is clear that the loss by the destruction of the house by fire must fall upon the complainants, unless they are protected by the terms of the contract respecting the procuring of insurance against such loss.

The terms of the contract in that respect afford, in my judgment, no ground for a decree that the insurance money received by defendant should be paid to complainants. On the contrary, the language used makes it clear that in case of loss under the policy stipulated for the insurance money obtained upon a loss was to be in defendant's favor, *i. e.,* for his interest as his interest should appear, *i. e.,* to be applied only to indemnify and protect him in case that the amount unpaid on the contract should not equal the insurance received.

It is not uncommon for parties to such contracts to stipulate therein that insurance money so received should be applied to the rebuilding of the destroyed edifice, if that rebuilding is entered upon and prosecuted. But in the absence of such stipu-

lation there is no ground on which the alternative prayer of the bill can be based. In passing, it may be mentioned that that prayer is for a decree directing the defendant specifically to rebuild the house. There is no proof of what such rebuilding would cost. There is therefore no proof that the $625 would suffice for such rebuilding. Obviously the decree asked for cannot be made. But there is a prayer for general relief, and I have assumed that complainants may ask for a decree under this bill requiring defendant to devote the insurance money to rebuilding.

But, in my judgment, if such modified relief is within the prayer of the bill, it cannot be granted upon the facts appearing. In the first place, complainants do not offer to rebuild, or show that such rebuilding can be done so as to preserve defendant's interest in the purchase-money, which is a lien on the premises, if the insurance money is contributed toward such rebuilding. In the second place, the terms of the contract do not, expressly or by implication, impose any obligation on the defendant to contribute the insurance money toward such rebuilding.

Assuming that the insurance money he received arose from a policy which took the place of insurance which the complainants were bound to, but did not, procure, the insurance was to protect defendant's interest. His interest was in the unpaid purchase-price. As that exceeded the amount of the insurance received, I think defendant performed every legal and equitable obligation imposed on him by the contract when he credited the amount received from the insurance on the purchase-price.

As I find no ground for supporting the bill or making any decree thereon, the bill must be dismissed, with costs.