## AUTOMATIC SPRINKLER CORPORATION OF AMERICA v. ROBINSON–SLAGLE LUMBER CO., Inc.*

### No. 4521.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

L. Percy Garrot, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

DREW, Judge.

The petition of plaintiff alleges that on the 9th day of October, 1928, the Automatic Sprinkler Corporation of America bound and obligated itself to furnish to the Robinson-Slagle Lumber Company a system of sprinklers, and to install the same, the Robinson-Slagle Lumber Company binding itself to pay for the said sprinklers the sum of $1,620; that the said agreement bound the Robinson-Slagle Lumber Company to bear any loss or damage from fire to the said sprinklers while the said sprinklers were in the premises of the Robinson-Slagle Lumber Company, and bound and obligated itself to keep the same insured for the benefit of plaintiff (this part of the agreement to last, of course, until the sprinklers had been paid for), the part of the contract concerning this obligation reading as follows: "Any loss or damage from fire or any cause not our fault to our materials, tools, equipment or work while in or about the premises, shall be borne by you and you are to carry at your expense, sufficient insurance for our benefit with standard companies, indemnifying us against any such loss."

The petition further alleges that by December 17, 1928, plaintiff had complied with the above-mentioned agreement in every particular, and that all of the said sprinklers had been furnished and installed; that on December 27, 1928, the said sprinklers were destroyed by fire; that the defendant, the Robinson-Slagle Lumber Company, had failed to insure said sprinklers; that, at the time of the destruction of the above-mentioned sprinklers, the defendant had paid nothing on the price of the said sprinklers; that the defendant has refused to pay anything to plaintiff for furnishing and installing said sprinklers; that the defendant agreed to pay attorney's fees in the event of default on its part to comply with its contract; and that therefore the defendant is liable unto plaintiff in the sum of $1,620, the price of said sprinklers, and, in addition, to the sum of $300 as attorney's fees.

The petition further alleges that the plaintiff had insured the system of sprinklers against loss or damage by fire; that, after the destruction of the sprinklers, the insurance company, under a loan agreement, loaned to

---

*Rehearing denied June 5, 1933.

plaintiff the sum of $1,620; that in said loan agreement it was stipulated that a suit could be prosecuted by the insurance company against the defendant in the name of plaintiff for the price of said sprinklers, the said loan agreement authorizing and empowering the insurance company to prosecute a suit of this kind; and that said sum of $1,620 was obtained as a loan, and not in payment of the insurance.

The contract by and between the plaintiff and the defendant, and the loan agreement, are a part of the record. According to the provisions of the contract, the title in and to the sprinklers was to remain in the plaintiff until they had been paid for.

Defendant has answered the petition of plaintiff, admitting all the facts contained in said petition, but contending that the sum of $1,620 was paid by the insurance company in payment of the claim of plaintiff against it, and that said sum was not loaned by the insurance company to plaintiff, and, having been paid in full once, it is not entitled to any judgment against defendant.

An exception of no cause or right of action has also been filed by defendant.

After defendant's answer and exception had been filed, plaintiff filed a motion asking for judgment on the pleadings.

The exception of no cause or right of action and rule to take judgment on the petition and answer were tried together. The lower court sustained the exception of no cause or right of action and plaintiff has prosecuted this appeal.

■ The agreement under which the money was paid to plaintiff, vendor, is as follows:

"Received from the National Liberty Insurance Company of America, a New York insurance corporation, the sum of One Thousand Six Hundred and Twenty Dollars ($1620) as a loan, and repayable to the extent of the first One Thousand Six Hundred and Twenty Dollars ($1620), plus interest, of any claim, however, arising, we may have and/or recovery we may make from any other party, person, persons, property or corporation on account of loss and damage to our property, consisting of damage to automatic sprinkler installation, including materials, labor, work, tools and equipment, on or about the 28th day of December, 1928, caused by fire, or from any insurance effected by any other person, persons, property or corporation in said property, or from any promissory note or notes, or any other negotiable instruments or other evidences of indebtedness which we may have against any other person or persons, partnership or corporation, and as security for such repayment we do hereby pledge to the said National Liberty Insurance Company of America the first One Thousand Six Hundred and Twenty Dollars ($1620), plus interest, of said recovery, and all our right, title and interest in and to any of the aforesaid recovery, promissory notes, negotiable instruments, or other evidences of indebtedness up to the sum of One Thousand Six Hundred and Twenty Dollars ($1620), plus interest, and said National Liberty Insurance Company of America is hereby authorized and empowered to prosecute suit in our name, or otherwise, against said party, person, persons, property, partnership or corporation, or any and all claims and demands arising from or connected with the aforesaid loss and damage, it being understood that if such suit is brought it shall be at the expense and under the exclusive direction and control of the said National Liberty Insurance Company of America, and that in the event recovery is made in excess of One Thousand Six Hundred and Twenty Dollars ($1620), plus interest, said excess, if any, shall be payable to the undersigned.

"The undersigned covenant that we have not released or discharged any such claim or demand against any such other party, person, persons, property, partnership or corporation, and that we will furnish the said National Liberty Insurance Company of America with any and all papers and information in our possession necessary for the proper prosecution of the aforementioned claim.

"In witness whereof, We have caused these presents to be executed and our corporate seal to be hereunto affixed this 27th day of March, 1929.

"Automatic Sprinkler Corp. of America,
"By E. J. Salisbury, Treasurer."

The courts of the United States have universally held that payment under such an agreement is not an unconditional payment, but is a conditional payment or loan, and a payment under such agreement does not deprive the insurance company nor the insured of any right they had prior to the payment. Dejean v. Louisiana & Western Ry. Co., 167 La. 111, 118 So. 822; Luckenbach v. McCahan Sugar Ref. Co., 248 U. S. 139, 39 S. Ct. 53, 55, 63 L. Ed. 170, 1 A. L. R. 1522, and numerous cases cited in note thereunder on page 1528.

In the Luckenbach Case, Justice Brandeis gave the following plausible reasons for this ruling:

" * * * It is essential to the performance of the insurer's service, that the insured be promptly put in funds, so that his business may be continued without embarrassment. Unless this is provided for, credits which are commonly issued against drafts or notes with bills of lading attached, would not be granted. Whether the transfer of money or other thing shall operate as a payment, is ordinarily a matter which is determined by the intention of the parties to the transaction. Compare The Kimball, 3 Wall. 37, 44, 18 L. Ed. 50, 54. The insurer could not have

been obliged to pay until the condition of their liability—i. e., nonliability of the carrier—had been established. The shipper could not have been obliged to surrender to the insurers the conduct of the litigation against the carrier, until the insurers had paid. In consideration of securing them the right to conduct the litigation, the insurers made the advances. It is creditable to the ingenuity of businessmen that an arrangement should have been devised which is consonant both with the needs of commerce and the demands of justice."

It is true that in the Luckenbach Case, there was a clause in the policy of insurance providing for such loan or conditional payment, and in the case at bar the petition does not allege or set out any such provision of the policy, and the policy was not attached or offered in the trial below. Although the provisions of the policy might govern the rights between the parties thereto, for the purpose of determining whether the payment was an absolute payment or a loan and conditional payment, we must be governed by the document evidencing the manner in which the payment was made and the intention of the parties from and to whom the payment was made. The conditional payment or loan made under the document above referred to and quoted did not divest the insured of any right or rights it had prior thereto.

The suit was filed, as shown by the loan agreement, in the name of the insured, for the benefit of the insurer. The case evolves itself into the question, To whose benefit did the insurance secured by the plaintiff vendor inure? If it inured to the benefit of the vendee, defendant, then plaintiff is without a cause of action. If it inured only to the benefit of plaintiff, vendor, it has a cause of action. The vendor, the nominal plaintiff in this suit, can have no direct interest in the suit. It has received the price of the goods sold in the form of a conditional payment, which will become an absolute payment if it fails to collect in this suit under the very terms of the loan agreement. However, the courts have held that it has a right to sue.

The question of subrogation does not enter the case, as there was no conventional subrogation. It is certain that if plaintiff had not secured the insurance, it would have had a cause of action against the defendant for the purchase price, the amount of which was agreed to be covered by insurance by defendant, which defendant failed to effect on the sprinkler system. The contract between plaintiff and defendant required the defendant, purchaser, to insure the sprinkler system for the benefit of plaintiff, vendor, in the amount of the balance due on the sprinkler system. When plaintiff effected the insurance on the sprinkler system, it made it unnecessary for defendant to do so, and, when the fire occurred, plaintiff, the vendor, was obliged to apply the insurance money towards paying the purchase price. Marion v. Wolcott, 68 N. J. Eq. 20, 59 A. 242; 37 A. L. R. 1324, 1326 note; Russell v. Elliott, 45 S. D. 184, 186 N. W. 824, 22 A. L. R. 556; McGinley v. Forrest, 107 Neb. 309, 186 N. W. 74, 22 A. L. R. 567; Camp & Meehl v. Christo Mfg. Co., 122 Va. 439, 95 S. E. 424, L. R. A. 1918D, page 936, and cases cited thereunder; Godfrey v. Alcorn, 215 Ky. 465, 284 S. W. 1094, 51 A. L. R. 925.

This appears to be the majority rule in this country. However, there is a minority rule to the contrary, and it is contended that the minority rule prevails in Louisiana, relying on the case of King v. Preston & Hall, 11 La. Ann. 95. The facts in that case are entirely different from the facts in this case, and it is clear from the opinion that the vendor had no insurable interest in the property and that the insurance company could have successfully resisted his claim. The fact that he collected money to which he was not legally entitled did not give the vendee any right to it.

We have been unable to find any case in Louisiana directly in point, and in our search of the decisions of other jurisdictions we find the majority rule to be as we have heretofore stated, and prefer to follow the majority rule instead of the minority. It has been repeatedly held that the insurer can reserve to itself in the policy the right to have the insured proceed legally in insurer's name for the benefit of the insurer, thereby in the policy itself subrogating the insurer to any and all rights of the insured. In this case the petition does not allege any such reservation in the policy. The policy is not attached or filed in evidence, and for the purpose of this exception we can not go beyond the pleadings, document attached, and evidence, and we are of the opinion, under the record as made up, that plaintiff has no cause of action against defendant, and, not having a cause of action in itself, it could not by contract or loan agreement create one to be exercised by it for the insurance company.

The lower court sustained an exception of no cause or right of action. There may be a right of action; therefore the judgment, in so far as it sustains the exception of no right of action, is reversed, and otherwise it is affirmed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by reversing that part of it which sustained the exception of no right of action, and affirming it in so far as it sustains the exception of no cause of action.

MILLS, J., recused.