## Kooser v. West Penn Railways Co.

*Alfred E. Jones*, for plaintiff.
*E. J. McDaniel*, for defendant.

MORROW, J., October 7, 1941.—Plaintiff brought an action in trespass to recover for damage to his automobile caused by the alleged negligence of defendant. On the petition of defendant a rule was granted to show cause why Home Insurance Company should not be joined as a coplaintiff, the petition asserting that plaintiff has a policy of insurance with that company insuring him against loss to his automobile in excess of $50, which excess it had paid him, so that he had a claim for $50 only and that the company was the real party in interest as to the balance of the claim. In answer to the rule it was denied by plaintiff that he had assigned a

part of his claim to the company, but it was admitted by him that the insurance company loaned him an amount equal to his claim in excess of the $50, taking a loan receipt reading as follows:

"Loan Receipt

Dated Sept. 7, 1940

"Received from the Home Insurance Co. (hereinafter referred to as 'company') the sum of sixty-nine and 25/100 dollars ($69.25) as a loan, without interest, repayable only in the event and to the extent of any net recovery the undersigned may make from any person, persons, corporation or corporations, or other parties, causing or liable for the loss or damage to the property described below, or from any insurance effected on such property, and as security for such repayment the undersigned hereby pledges to the said 'company' all his, its or their claim or claims against said person, persons, corporation or corporations or other parties, or from any insurance carrier or carriers, and any recovery thereon, and hereby delivers to said 'company' all documents necessary to show his, its or their interest in said property.

"The undersigned hereby agrees to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, or other parties, through whose negligence or other fault the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in his, its or their own name.

"In further consideration of said advance the undersigned hereby guarantee(s) that he, it or they are the owner(s) of said property and entitled to recover upon said claim for loss or damage thereto, and hereby appoint(s) the managers and/or agents of the said 'company' and their successors severally, his, its or their agent(s) and attorney(s)-in-fact, with irrevocable power, to collect any such claim or claims, and to begin, prosecute, compromise or withdraw in his, its or their

name, but at the expense of the said 'company,' any and all legal proceedings that the said 'company' may deem necessary to enforce such claim or claims, and to execute in the name of the undersigned, any documents that may be necessary to carry the same into effect for the purposes of this agreement.

"Any legal proceedings are to be under the exclusive direction and control of said 'company.'

"The property hereinabove set forth is as follows:

1939 Plymouth Coupé, Motor P8-281577,
serial 1353095

"In Witness Whereof Vernon Kooser has affixed his name and seal (or the ................. has caused
name of corporation
this instrument to be signed by its duly authorized officer and the seal of the corporation affixed thereto) this 7th., day of Sept. 1940.
Witness:

W. H. SHOWMAN,
Connellsville, Pa.
(Sgd.)    VERNON KOOSER."

It is now contended by defendant that by reason of plaintiff's admission with respect to the loan the Home Insurance Company must be joined as a plaintiff in the suit under Pa. R. C. P. 2002, which is, in part, as follows:

"(a) Except as otherwise provided in clauses (b) and (c) of this rule, all actions shall be prosecuted by and in the name of the real party in interest, without distinction between contracts under seal and parol contracts.

"(b) A plaintiff may sue in his own name without joining as plaintiff or use-plaintiff any person beneficially interested when such plaintiff. . . .

"(2) is a person with whom or in whose name a contract has been made for the benefit of another."

The exceptions referred to in the rule that are not quoted above clearly do not apply to the question here involved.

The real question argued on behalf of defendant is that the said loan receipt constitutes a subterfuge and is in effect a payment and assignment such that under the said rule the insurance company must be joined as coplaintiff. Hemminger v. Johnson, 39 D. & C. 13, is cited.

In the adoption of the above rule such a result as here contended for by the defense was not, in our opinion, intended. The agreement contained in the loan receipt was made with plaintiff not for the benefit of the alleged negligent defendant. It is defendent, not the insurer, that is now invoking subrogation for the latter in this action. In McCann v. Dixie Lake & Realty Co., 44 Ga. App. 700, 162 S. E. 869 (1932), a case where a similar receipt and agreement was given to a liability insurer by an insured, the Court of Appeals of Georgia said (p. 701):

"Of course, McCann wished to collect from the insurance company and the insurance company wished to recover as much of their loss as possible. If these parties decided that their best interests would be served by making the payment a loan subject to repayment upon and to the extent of the recovery of the property by McCann, they had a perfect right to make such an agreement, which they did. And the language employed by the signer of the receipt clearly shows his intention to accept and treat the payment as a loan, and to receipt for a loan and not make an assignment of his chose in action. The paper states in plain and unambiguous language that the money was 'Received . . . *as a loan*,' and states that it is '*repayable*' upon certain conditions, and states the terms upon which it is '*repayable*,' and pledges any property that might be recovered as '*security for such repayment*' (italics ours), and shows further that McCann should enter suit for the stolen property in his own name; and there is no provision for the Assurance Company to sue as assignee, nor is there any reference to an assignment or

transfer of the plaintiff's claim. Neither is there any ambiguity or concealment about the paper. It shows clearly that the Assurance Company is paying McCann for the stolen property, and that, to serve their best interests and more nearly insure a recovery, they have elected to give the payment the legal status of a loan subject to repayment on certain conditions. In signing such receipt Mrs. McCann is fully protected, because if she does not recover her property she is paid for it, and if she does recover it she has sustained no loss, is entitled to no pay, and is due to repay the money to the Assurance Company. For the suit to be prosecuted by Mrs. McCann at the expense of the Assurance Company is a usual provision of insurance contracts, and enables the Assurance Company to recover or lessen its loss."

In Cadillac Automobile Co. v. Fisher, 54 R. I. 264, 172 Atl. 393 (1934), the Supreme Court of Rhode Island ruled to the same effect as did the Court of Appeals of Georgia, supra. Likewise ruled the Court of Appeals of Louisiana in Automatic Sprinkler Corp. of America v. Robinson-Slagle Lumber Co., Inc., 147 So. 542 (Louisiana Court of Appeal, 1933). See also similar ruling, December 19, 1940, by the Circuit Court of Appeals, Seventh Circuit, in case of First National Bank of Ottawa v. Burns, 116 F. (2d) 221.

In Ash v. Rhodes, 5 N. Y. Supp. (2d) 939 (City Court, Binghamton, 1938), the facts are similar to the facts in the instant case. The same insurance company and a like loan receipt are mentioned. In that case it was contended for the defense that, regardless of its form, the "loan receipt" and the advancement pursuant to its terms, as a matter of law, subrogated the insurance company, to the extent of such payment, to plaintiff's claim against defendant. The court said (p. 942):

"But the 'loan receipt' was devised for the very purpose of avoiding the rules of subrogation incident to cases where actual payment by the insurer to the in-

sured has been made. And the sole question to be answered in the instant case is whether the insured and the insurer accomplished their purpose by the use of the device referred to as the 'loan receipt'. I think Justice Brandeis answered that question in the affirmative in the Luckenbach Case hereinbefore referred to."

In the case of Purdy v. McGarity, 176 Misc. 82, 26 N. Y. Supp. (2d) 731 (decided April 3, 1941), it was held as stated in the syllabus:

"The advancement of money by insurance company to automobile owner under 'loan receipt', obligating owner to repay amount thereof only to extent of any net recovery by owner on account of damage to automobile resulting from a stipulated collision and pledging such recovery as security for repayment was not in violation of insurance law, and was not an 'assignment of cause of action' by owner for damages to automobile, so as to deprive owner of right to recover such damages, on ground that owner was not the 'real party in interest.' "

A different view is found in the case of Yezek v. Delaware, L. & W. R. Co., 28 N. Y. Supp. (2d) 35 (decided by Supreme Court of Broome County, N. Y., May 29, 1941). It was there held that, the policy of insurance being immediately enforcible, a detour in the form of a loan was unnecessary to secure prompt payment or protect the insurer and that if it paid it was subrogated to any claim of the insured against defendant. This view assumes that the "loan receipt" is unnecessary to secure prompt payment, overlooking the fact that possibly such receipt may in some cases be the consideration securing prompt payment. The insurer might dispute the amount of its liability or interpose other defenses. It also overlooks the fact that the insured and the insurer have a right to decide whether their best interests would be served by making the payment a loan subject to terms agreed upon, and have a right to make such an agreement. Nor is the word "subrogated" as used in that case expressly defined.

Subrogation may be conventional, arising by contract, or legal, arising by operation of law: 60 C. J. 695. The former has been said to be synonymous with assignment. There must be a lawful contract therefor. We infer that subrogation in this sense was meant and that the existence of an insurance policy containing such a contract was assumed. If so, it is not clear why the parties that made such contract for their own benefit, not for the benefit of a negligent defendant, could not, before any payment thereunder, legally modify or change it by a new contract in the form of the loan agreement that they did enter into; nor why this new agreement should not bind both of them by its exact language, when neither of them seeks to evade it. Only the defendant, not a party to either contract, sought to have this accomplished.

If it was legal subrogation, rather than conventional, that was meant in that case, it would still seem necessary for the insurer to invoke it, rather than waive it, prior to enforcement. In legal subrogation three elements are involved: (1) A valuable right; (2) a person who owns the right; (3) a person who is seeking to be substituted in that ownership: 60 C. J. 711. It is of purely equitable origin, and when a person does seek to have it applied its application is always controlled for the promotion of justice: Robeson's Appeal, 117 Pa. 628, 633; Musgrave v. Dickson et al., 172 Pa. 629, 632.

In Battaglia v. Horn et al., 3 N. Y. Supp. (2d) 961 (City Court, Buffalo, 1938), it is said:

"The agreement between the parties indicates that the money advanced to the plaintiff was a loan and not a payment to the plaintiff under his policy, and reading the agreement I fail to see where fiction or subterfuge exists. The owner of an automobile is not compelled to take out insurance, and if for the mutual protection of himself or others he does insure against loss, he should not be placed in a position where it might affect or de-

feat his recovery in a collision. It is commendable that the owner of an automobile does insure against accidents, because too many automobile owners are not covered by insurance, to the detriment of those who may come in collision with them."

In view of the authorities cited it is our conclusion that under the facts in this case Pa. R. C. P. 2002 does not require that Home Insurance Company be a co-plaintiff.

### Order

And now, October 7, 1941, after consideration, it is ordered that the rule to show cause why Home Insurance Company should not be joined as a coplaintiff in this case be and it is hereby discharged.