235 N.J. Super. 105 (1989)
561 A.2d 663
THE DIXON VENTURE, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
THE JOSEPH DIXON CRUCIBLE COMPANY, A NEW JERSEY CORPORATION, DIXON TICONDEROGA COMPANY, A DELAWARE CORPORATION, AND THEIR SUCCESSORS AND ASSIGNS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 1, 1989.
Decided July 21, 1989.
*107 Before Judges KING, ASHBEY and SKILLMAN.
David B. Rubin argued the cause for appellant (Rubin, Rubin & Malgran, attorneys; David B. Rubin, on the brief).
John K. Enright argued the cause for respondents (Kirsten, Simon, Friedman, Allen, Cherin & Linken, attorneys; John K. Enright and Harold Friedman, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
The issue presented by this appeal is whether a transferee of property conveyed in violation of the Environmental Cleanup Responsibility Act (ECRA), N.J.S.A. 13:1K-6 to 13, may sue the transferor for damages without voiding the conveyance. The trial court held that the transferee's sole remedy under ECRA was to void the conveyance and recover incidental damages. We conclude that the trial court's interpretation of the remedies authorized by ECRA was unduly restrictive and therefore reverse.
On April 28, 1983, the predecessor in title of plaintiff Dixon Venture (Venture) entered into a contract with defendant Joseph Dixon Crucible Company, the predecessor of defendant Dixon Ticonderoga Company (Ticonderoga), to purchase a large industrial complex in Jersey City. The complex had been used for at least 20 years to manufacture pencils, erasers, crayons, lubricants and related products. Prior to the closing, the Legislature enacted ECRA, which became effective on December 31, 1983. See L. 1983, c. 330, § 11. Title to the property was conveyed on February 28, 1984. Neither the contract of sale nor any of the closing documents contain any reference to *108 ECRA and no cleanup plan under ECRA was submitted prior to closing.[1] Venture leased a portion of the property back to Ticonderoga for a two year term. Around September 1985, the parties terminated the lease-back.
In connection with the termination of the lease, Venture sent a letter, dated July 15, 1985, formally requesting that Ticonderoga commence the steps required to comply with ECRA. On October 9, 1985, Venture sent a second letter to Ticonderoga, asserting that Ticonderoga had been obligated to comply with ECRA prior to conveying the property to Venture. The second letter also asserted that Ticonderoga had refused to sign proposed ECRA submissions to the Department of Environmental Protection (DEP) and that Venture would file those submissions on its own.
Subsequently, in order to preserve a commitment for financing to undertake residential development, Venture filed several submissions with the DEP to secure its approval for a proposed cleanup of the site. As a result, Venture agreed to an Administrative Consent Order, which made it responsible for all costs of cleanup, imposed a $6,850 penalty, required a letter of credit in the amount of $500,000 to be posted and authorized Venture to proceed with its residential development.
On May 27, 1986, Venture filed a three count complaint alleging that Ticonderoga failed to comply with the requirement of ECRA when it sold the premises to plaintiff and ceased manufacturing operations, violated the subsequent lease-back agreement and breached its implied obligation of good faith in connection with both the contract of sale and the lease agreement. Defendants answered by denying all allegations of the complaint and raising various affirmative defenses including estoppel.
*109 The trial court heard the matter on cross-motions for summary judgment and issued a letter opinion on February 18, 1988 which held that the sole remedy available to a transferee for a violation of ECRA was to void the conveyance and recover incidental damages. The court further held that Venture was barred on grounds of waiver and estoppel from obtaining any recovery from Ticonderoga, because it had entered into an Administrative Consent Order pursuant to which it agreed to clean up the property instead of seeking to void the conveyance.
Venture then moved to amend its complaint to specifically assert common law contract and tort claims. However, the trial court concluded that Venture's complaint raised only "ECRA claims" and that Venture should not be permitted to amend its complaint more than two years after filing. Consequently, a judgment was entered dismissing the complaint.
Under ECRA, the owner or operator of an industrial establishment who plans to sell or transfer operations must (1) notify DEP within five days of the execution of an agreement of sale; (2) submit, within 60 days prior to transfer of title, a cleanup plan or a negative declaration that there has been no hazardous discharge or that such discharge has been cleaned up; and (3) obtain financial security guaranteeing performance of any required cleanup plan. N.J.S.A. 13:1K-9b. The cleanup plan is ordinarily implemented by the present owner or operator, but a transferee may assume that responsibility. N.J.S.A. 13:1K-9c. In accordance with an approved cleanup plan, the DEP must inspect the premises and certify whether the plan has been executed and the site detoxified. N.J.S.A. 13:1K-10c.
A determination of responsibility for contamination plays no part in the ECRA process. Superior Air Products Co. v. NL Industries Inc., 216 N.J. Super. 46, 63 (App.Div. 1987). Thus, ECRA imposes a "self-executing duty to remediate without the necessity and delay of a determination as to liability for the contamination." Ibid.
The remedial section of ECRA pertinent to this case provides:

*110 Failure of the transferor to comply with any of the provisions of this act is grounds for voiding the sale or transfer of an industrial establishment or any real property utilized in connection therewith by the transferee, entitles the transferee to recover damages from the transferor, and renders the owner or operator of the industrial establishment strictly liable, without regard to fault, for all cleanup and removal costs and for all direct and indirect damages resulting from the failure to implement the cleanup plan. [N.J.S.A. 13:1K-13a]
This section clearly states that "[f]ailure of the transferor to comply with any of the provisions of this act ... entitles the transferee to recover damages from the transferor." Nevertheless, the trial court construed this authorization for the recovery of damages to be limited to damages incidental to the voiding of a conveyance under the first clause of N.J.S.A. 13:1K-13a. We find nothing in the language of N.J.S.A. 13:1K-13a or the policies which underlie ECRA to support such a limitation upon the recovery of damages.
A suit for damages is a well established remedy available to a transferee of real property when the transferor has failed to discharge its legal obligations. If a seller of real property breaches warranties, a purchaser ordinarily has the option of either rescinding the transaction or ratifying it and suing for money damages. See Caparrelli v. Rolling Greens, Inc., 39 N.J. 585, 593 (1963); Pressey v. Heath, 35 N.J. Super. 346, 350 (Ch.Div. 1955). Moreover, we have recently recognized that a property owner may maintain a common law action for damages against a predecessor in title who contaminated the property. T & E Industries Inc. v. Safety Light Corp., 227 N.J. Super. 228 (App.Div. 1988), certif. granted 117 N.J. 118, 119 (1989). We find no basis for interpreting the language N.J.S.A. 13:1K-13a to provide more limited remedies to a purchaser of property covered by ECRA than would be available under common law principles.
Moreover, nothing in the policies underlying ECRA would preclude a transferee from suing the transferor rather than voiding the conveyance. The essential goal of ECRA is to secure the cleanup of contaminated industrial sites at the earliest possible date. Superior Air Products Co. v. NL *111 Industries, Inc., supra, 216 N.J. Super. at 63. This goal can be fully achieved by a transferee cleaning up a site with the approval of DEP while preserving its right to seek recovery of the cleanup costs from the transferor.[2]See N.J.S.A. 13:1K-9c ("[T]he ... transferee ... may assume ... responsibility [for implementation of a cleanup plan] pursuant to the provisions of this act."). Indeed, because ECRA obligations are imposed upon the transfer of a site, see N.J.S.A. 13:1K-9b,[3] and thus a transferor may contend that it is absolved of any cleanup obligation if the transferee voids the transfer, a cleanup of a site may be achieved sooner if a transferee ratifies a transfer instead of voiding it.
Although the issue of a transferee's right to sue a transferor for damages for violations of ECRA has not arisen previously, we find implicit support for the maintainability of such an action in Superior Air Products Co. v. NL Industries, Inc., supra, which states:
[T]he simple aim of ECRA is swift and thorough cleanup through a regulatory process; when an ECRA proceeding is pending, the liability determination must be left to resolution in an action among the former and present owners and possessors of the property. [216 N.J. Super. at 65; emphasis added].
Clearly, the only remedy available to a present owner of a contaminated site who has conducted a "swift and thorough cleanup through [the] regulatory process" is damages. Accordingly, we conclude that N.J.S.A. 13:1K-13a authorizes a transferee of property transferred in violation of ECRA to maintain an action for money damages against the transferor.
*112 Our conclusion that N.J.S.A. 13:1K-13a authorizes a suit for money damages by the transferee is not affected by N.J.A.C. 7:26B-9.2. This regulation states:
(a) The transferee shall be entitled to recover damages from the transferor due to the voiding of the sale.
An administrative regulation which is inconsistent with the legislation pursuant to which it was adopted is invalid. Lower Main St. Ass'n v. New Jersey Housing & Mortgage Finance Agency, 114 N.J. 226, 243 (1989). In any event, we read N.J.A.C. 7:26B-9.2 as simply a reiteration of a transferee's statutory right to void a conveyance which violates ECRA and not as negating other remedies set forth in the statute.
Defendants also argue that the dismissal of Venture's complaint should be affirmed on the alternative ground that it is estopped from seeking damages, because it voluntarily acquired the property knowing that it required a "major environmental cleanup" and it voluntarily agreed to clean up the property itself. However, the trial court's conclusion that Venture's claim was barred by principles of waiver and estoppel was premised on its view, rejected by us in this opinion, that ECRA does not authorize a transferee to sue a transferor for damages without voiding the conveyance. Consequently, the estoppel argument now being made by defendants was not passed upon by the trial court and is not properly before us on this appeal. See Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234 (1973). In any event, defendants' present estoppel argument, as well as the parties' other arguments relating to liability, involve contested issues of material fact which can only be resolved after an evidentiary hearing. Finally, if Venture chooses to pursue its "non-ECRA" as well as its ECRA claims, it should be permitted to amend its complaint to more specifically plead those claims.
Accordingly, we reverse the summary judgment in favor of defendants and remand for further proceedings in conformity with this opinion.
NOTES
[1] No issue is raised on this appeal regarding the applicability of ECRA to this transfer.
[2] DEP may exercise its independent authority to void the transfer under N.J.S.A. 13:1K-13b, if it concludes that a ratification of the transfer and cleanup by the transferee will not adequately protect the public interest.
[3] ECRA obligations also are imposed when an owner of an industrial establishment closes operations. N.J.S.A. 13:1K-9b; see In re Fabritex Mills, Inc., 231 N.J. Super. 224 (App.Div. 1989).