584 A.2d 797

THE DIXON VENTURE, A NEW JERSEY PARTNERSHIP, PLAIN-TIFF–RESPONDENT, v. THE JOSEPH DIXON CRUCIBLE COMPANY, A NEW JERSEY CORPORATION, DIXON TICONDER-OGA COMPANY, A DELAWARE CORPORATION, AND THEIR SUCCESSORS AND ASSIGNS, DEFENDANTS–APPELLANTS.

Argued October 9, 1990—Decided January 30, 1991.

*Julian Wilsey* argued the cause for appellants (*Greenberg Margolis,* attorneys).

*David B. Rubin* argued the cause for respondent (*Rubin, Rubin, Malgran & Kuhn,* attorneys).

PER CURIAM.

We affirm the judgment of the Appellate Division substantially for the reasons stated in its reported opinion below. 235 *N.J.Super.* 105, 561 *A.*2d 663 (1989). We modify the judgment to allow the court below to mold the pleadings to conform to the unique circumstances of this case. The case concerns the status of a purchaser of industrial property who agreed to buy the property during a window of time that began before the effective date of the Environmental Cleanup Responsibility Act (ECRA), *N.J.S.A.* 13:1K-6 to -13, but did not close title to the property until February 28, 1984, two months after the Act's effective date.

The facts of the transaction are fully set forth in the opinion of the Appellate Division. We therefore omit a detailed recital and make no reference to certain assignments and lease-back agreements or designations of parties that are not critical to the disposition. The property had housed an old pencil and crayon factory. The sale contract provided, among other things, that most equipment would be removed by the seller prior to closing except certain tanks, which were to be cleaned and left in a nonhazardous condition. The buyer proposed to convert the factory buildings into 400 units of apartment housing. When, after the title had passed, the buyer's construction mortgagee insisted on ECRA compliance as a condition of the construction loan, the buyer sought to recover from the seller the costs of ECRA compliance. Neither the contract of sale nor the title-closing documents adverted in any way to the satisfac-

tion of ECRA's requirements, although the contract recited that plaintiff was aware of the property conditions and accepted the premises in those conditions subject to any subsurface conditions not disclosed by any instrument of record.

When negotiations were unsuccessful, the buyer sued the seller for the costs of the cleanup. The buyer sought a summary judgment on the basis that the seller had violated ECRA. The seller moved to dismiss the complaint. After some discussion of whether the complaint fairly pleaded other causes of action, the trial court held that ECRA did not afford the purchaser a cause of action against the seller except when the purchaser elects to rescind the sale. It further refused to permit the complaint to be amended to state any other claim. The Appellate Division reversed, holding that ECRA afforded the purchaser a private right of action for damages arising from the seller's failure to comply with the statute. Both viewpoints find arguable support in the Act and its interpretative development under the DEP. For example, defendant argues that the only private remedy specified in the Senate Committee Statement is voiding the sale or transfer. The Statement provides: "Violation of any of the provisions of the bill would constitute grounds for voiding the sale or transfer of the real property or business by the transferee * * *." Senate Energy and Environment Committee Statement, Assembly No. 1231. Plaintiff counters that the plain language of the statute establishes a private right of action. ECRA provides that "[f]ailure of the transferor to comply with any of the provisions of this act * * * entitles the transferee to recover damages from the transferor * * *." *N.J.S.A.* 13:1K–13a. In the circumstances of this case, however, an unqualified adoption of either the trial court resolution or the Appellate Division resolution would be problematic. Each polar position may produce an unjust result.

ECRA is quite unlike other environmental regimes in that it uses market forces to bring about the reversal of

environmental pollution. It recognizes that some environmental conditions not posing an imminent hazard to air or water resources of the state may safely attend economic activities. Thus, ECRA does not impose an independent duty to clean up the property during a period of operation, although the owner cannot walk away from the scene after deciding to cease operations. But, absent provisions in the contract, in the event of sale, under ECRA the seller assumes the risks of compliance. Allowing a private right of action under ECRA would in that circumstance be consistent with the risk assumed by the seller. We thus endorse the reasoning and conclusion of the Appellate Division which held that a private right of action may be implied under ECRA.

The difficulty with allowing that option here is that it does not take into account the actual understanding of these parties in terms of their contractual relationship. The option to pursue an action for damages in lieu of rescission presupposes an economic choice that simply did not exist in this case, the assumption of the market risk, neither party apparently being aware of the law. Given the unique circumstances of this case (unlikely ever to recur as we can think of no circumstances in which a reasonably sophisticated buyer, attorney, or title company would not have this issue resolved in the contract), it may be unfair to enforce unqualifiedly the private right of action under ECRA. For although allowing such an option in the usual case is consistent with the goals of ECRA, it is inconsistent here with ECRA's goal of allowing the parties' conduct to be a function of the prevailing market. This is not to say that there should be no remedy, but rather that the remedy should be in accordance with the economic realities of the situation. Under ECRA, the seller will be subject to absolute liability without regard to fault. *N.J.S.A.* 13:1K–13a. Had the seller known of ECRA's requirements when it entered into this transaction, it would undoubtedly be fair to impose this obligation under the statute because it would do nothing other than effectuate the statutory goals and the market choice made.

The seller argues that imposing such an obligation here would result in either a frustration of the parties' purpose or enforcement of a contract that was the product of mistake because the seller was unaware of the requirements of ECRA. *See Edwards v. Leopoldi,* 20 *N.J.Super.* 43, 54, 89 *A.*2d 264 (App.Div.), *certif. denied,* 10 *N.J.* 347, 91 *A.*2d 671 (1952) (a contract is to be construed "subject to the implied condition that the parties shall be excused in case, before breach, the state of things constituting the fundamental basis of the contract ceases to exist without default of either of the parties").

Although we need not decide those contractual questions, we agree that plaintiff's complaint should fairly be read to state a cause of action under ECRA. We note also here the added feature of the seller's possible independent ECRA obligation based on the lease-back agreement between the parties. Absent estoppel, however, it does not follow that the desirable or just result is an all-or-nothing award of damages to the purchaser. The question is how best to remedy this transitional occurrence. To some extent, the answer will undoubtedly require analysis of the assumptions of each party at the time of the closing and whether the anticipated costs of ECRA compliance would be so disproportionate to the sale price that it would have altered the economic choices that the seller would have made. The parties agreed to a sale price of $3,000,000. Although the cost of ECRA compliance is not apparent from the record, the plaintiff did agree to the terms of an Administrative Consent Order that imposed a $6,850 penalty and required that a $500,000 letter of credit be posted. These figures may or may not reveal an unjust disproportion between the sale price and the cost of ECRA compliance, depending on the assumptions of the parties. On the one hand, if the seller fixed a price without taking the costs of ECRA compliance into consideration, it may be inequitable to impose the total cost of ECRA compliance on the seller. On the other hand, if the buyer closed knowing the requirements of ECRA but nonetheless concluded the deal, it might not be fair to award it full dam-

ages. *See Medivox Productions, Inc. v. Hoffmann–LaRoche, Inc.,* 107 *N.J.Super.* 47, 57, 256 *A.*2d 803 (Law Div.1969) (surrounding circumstances examined to ascertain "the common understanding" reached by the parties).

To sum up, we agree with the Appellate Division that in a true post-ECRA transaction, a transaction that would reflect that the parties made the market choices and took the economic risks with knowledge of the ECRA requirements, a buyer should not be limited to the rescission remedy. The private right of action would more fully effectuate the goals of ECRA. The seller assumes the risks of cleanup and should not be able to avoid them by insistence on the rescission remedy.

The law, however, should tailor its remedy to the circumstances of the case, and the present action does not involve such a transaction. Hence, although we concur in the judgment of remand in this case, we modify its terms. The ECRA statute does not preempt the law of contracts nor, under these circumstances, forbid a proper equitable remedy for such contractual relationships. We remand the case to the trial court to fashion the remedy that best effectuates "the common understanding" reached by the parties in light of the intervening ECRA requirements.

As modified herein, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.