259 N.J. Super. 583 (1992)
614 A.2d 1071
GEORGE C. FEIGHNER, RONALD V. MANGRAVITE, ALLAN R. ANDERSON AND ROBERT V. VOGEL, A GENERAL PARTNERSHIP TRADING AS MANER CO., PLAINTIFFS-APPELLANTS,
v.
ANTON SAUTER AND EDITH SAUTER, HIS WIFE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1992.
Decided October 22, 1992.
*586 Before Judges COLEMAN, J.H., ARNOLD M. STEIN and CONLEY.
William T. Smith argued the cause for appellants (Hook, Torack & Smith, attorneys; Mr. Smith on the brief).
Samuel D. Bornstein argued the cause for respondents.
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
This appeal raises two important issues: (1) whether the sellers of industrial realty encumbered by the Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K-6 to 13, (ECRA), may unilaterally rescind a contract of sale when the owner's cleanup obligation has been capped at less than 9% of the selling price, and (2) whether the signing of a contract of sale is a "sale or transfer" which triggers ECRA cleanup responsibilities. The trial judge held that the seller could not rescind and that the buyers were entitled to specific performance of the contract of sale. We agree and affirm.

*587 I
The essential facts are not in dispute. Plaintiff partnership and the individual partners agreed to sell industrial realty located at 5 Fir Court, Oakland, New Jersey, to defendants for $1,200,000. The property consists of approximately one acre with a two story office building used for offices and light manufacturing. The contract of sale as amended was executed after the effective date of ECRA. While the contract acknowledges the applicability of ECRA, it does not specifically enumerate or define the sellers' ECRA responsibilities. The contract, however, does provide, among other things, that:
4. In the event the title is not passed from seller to buyer in accordance with Contract dated April 12, 1985, due to any fault of the seller, including failure to obtain ECRA approval, buyer will be entitled to the return of all deposit monies used in accordance with the preceding paragraphs.
The New Jersey Department of Environmental Protection and Energy (DEPE) informed plaintiffs on August 30, 1985, that because of the activities of two tenants in the premises, the sale of the property was "subject to the provisions of ECRA." That prompted plaintiffs to retain the services of B & P Environmental Resources, Inc. (B & P) to prepare a Sampling Plan and a Cleanup Plan. On approximately March 1, 1987, B & P advised plaintiffs that the cleanup costs were estimated to be between $50,000 and $70,000. Plaintiffs fired B & P near the end of March 1987.
Plaintiffs then retained Langan Engineering. Joseph Torlucci, a geologist and project manager assigned to plaintiffs' case, projected in January or February 1988 that soil remediation would range in costs from a low of less than $100,000 to a high of $300,000. On at least two occasions before March 1988, the DEPE and Torlucci recommended that plaintiffs execute an Administrative Consent Order (ACO) to permit the title closing to occur. As an incentive, in January 1988 defendants offered to post a performance bond, not exceeding $100,000, if plaintiffs would enter into an ACO with DEPE and close title. Plaintiffs refused to execute an ACO.
*588 On March 14, 1988, plaintiffs' attorney attempted to rescind the contract unilaterally in a letter addressed to defendants. The letter stated:
Unfortunately, despite the best efforts of my clients, they have been unable to satisfy the requirements of the Environmental Clean Up and Responsibility Act of the State of New Jersey, and, as a result, have been unable to transfer the property in accord with the terms of the contract.
At the present time they are uncertain as to when or if ever they will be able to satisfy the statutory requirements. For the foregoing reasons and in accord with the terms of the above referenced contract, I hereby declare this contract void. Pursuant to Paragraph 4, I have enclosed herewith a check in the amount of $30,577.79, representing a refund of your deposit monies as per Paragraph 4 of the second addendum to the contract.
When defendants rejected plaintiffs attempt to cancel the contract, plaintiffs instituted the present litigation on March 25, 1988 in the Chancery Division, General Equity, seeking rescission of the contract of sale. Defendants filed a counterclaim seeking the following relief:
A. Requiring that [plaintiffs] specifically perform the provisions of their Contract with the Defendants and obtain E.C.R.A. approval of the New Jersey Department of Environmental Protection for the transfer of title;
B. Requiring that they specifically perform their Contracts with the Defendants and convey the premises to the Defendants when E.C.R.A. approval has been obtained;
C. Requiring that they pay to the Defendants compensatory damages, interest and Court costs; and
D. For such other and further relief that the Court may deem appropriate and proper.
A bench trial was conducted between May and July 30, 1991. At the close of plaintiffs' evidence, the trial judge granted defendants' motion to dismiss the complaint. At the close of all the evidence, the trial judge determined that the plaintiffs' conduct had not been "fair, just or reasonable." The judge found that plaintiffs' conduct was inspired by a desire to make more money in another sale. He found that after the present contract was executed, the assessed valuation of the property increased to $2,289,400 in February 1987. He also found that the property operated at a loss through 1988, but in 1989 and 1990 it operated at a profit. We find sufficient credible evidence in the record to support these findings. Rova Farms *589 Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
In contrast, the judge found that the defendants had "acted in good faith" and that their conduct had been fair, just and reasonable. He based that finding on the fact that defendants cooperated with plaintiffs by permitting their deposit to be used for renovation for incoming tenants, and because they offered to pay up to $100,000 towards soil remediation or for posting a performance bond as financial assurance for an ACO. These findings are also supported by sufficient credible evidence in the record. Ibid.
Final Judgment was entered on September 5, 1991, directing plaintiffs to (1) specifically perform the contract as amended, (2) execute forthwith an ACO with DEPE to permit title to be conveyed to defendants, and (3) deduct $100,000 from the plaintiffs' share of the closing proceeds and to deliver it to defendants' attorneys as the plaintiffs' maximum cleanup liability. Should the cleanup cost less than that sum, the difference is to be returned to plaintiffs. Any amount in excess of that sum is to be borne by defendants. In other words, plaintiffs-landowners' cleanup responsibility was capped at $100,000.

II
In this appeal, plaintiffs argue that "the rights of the parties are defined by the terms of the contract, not by ECRA," and that based on the contract, plaintiffs' request for rescission should have been granted.
Plaintiffs' assertions that ECRA does not affect the rights of the parties to a contract to sell industrial realty is legally incorrect. Recently, our Supreme Court in Dixon Venture v. Joseph Dixon Crucible, 122 N.J. 228, 584 A.2d 797 (1991), recognized that ECRA affects the rights and/or obligations of both seller and buyer. When, as here, the seller and buyer enter into a contract with the knowledge that ECRA applies, and the contract does not shift the ECRA responsibilities *590 to the buyer, the statute imposes absolute liability for cleanup upon the seller. Id. at 232, 584 A.2d 797; N.J.S.A. 13:1K-9 and N.J.S.A. 13:1K-13. Dixon did not involve any contractual obligation to comply with ECRA, yet the Court found a statutorily imposed obligation upon the seller. Where the contract has not shifted the cleanup responsibility to the buyer, the "seller assumes the risks of cleanup and should not be able to avoid them by insistence on the rescission remedy." Id. at 234, 584 A.2d 797.
We also reject plaintiffs' contention that their request for rescission of the contract should have been granted. The power to rescind a contract to sell reality rests on equitable principles. The power to rescind should be exercised sparingly because equity abhors forfeitures and "if they can be avoided on a fair and reasonable interpretation of the instrument involved, a court of equity will undertake to do so." Tizard v. Eldredge, 25 N.J. Super. 477, 481, 96 A.2d 689 (App.Div. 1953).
The usual grounds for rescission are fraud, mutual mistake, undue influence, duress, lack of mental capacity, intoxication or inadequacy of consideration. Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 611-612, 560 A.2d 655 (1989); Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336, 519 A.2d 368 (Ch.Div. 1986); 12 Williston on Contracts, § 1455 (Jaeger ed. 1970). The trial judge found neither of the above grounds existed in this case. Those findings are supported by the record. But even if the sellers were mistaken in their assumption as to the maximum they would be required to spend for cleanup, by limiting their expenditure to less than 10% of the selling price of the realty, means the seller's cleanup responsibility is not materially more onerous than it would have been if the contract had limited their exposure. See Beachcomber Coins, Inc. v. Boskett, 166 N.J. Super. 442, 445, 400 A.2d 78 (App.Div. 1979). Additionally, the contract conferred the option of rescission upon the buyers only and not the sellers. Since there was neither a factual nor legal basis to support the *591 sellers' claim for rescission, the denial of plaintiffs request for rescission does not represent an abuse of discretion.
Plaintiffs further contend that a purchaser's private right of action against a seller recognized in Dixon can be asserted by a purchaser only after there has been a "sale or transfer" of industrial realty. Plaintiffs argue essentially that because there was no transfer of title by deed as contemplated by the contract, no "sale or transfer" occurred, thereby triggering the ECRA requirements. They argue that it was, therefore, improper to order specific performance of their ECRA obligation.
We reject plaintiffs' assertion that there was no "sale or transfer" of industrial realty within contemplation of ECRA. N.J.S.A. 13:1K-9b provides that:
b. The owner or operator of an industrial establishment planning to sell or transfer operations shall:
(1) Notify the department in writing within five days of the execution of an agreement of sale or any option to purchase;
(2) Submit within 60 days prior to transfer of title a negative declaration to the department for approval, or within 60 days prior to transfer of title, attach a copy of any cleanup plan to the contract or agreement of sale or any option to purchase which may be entered into with respect to the transfer of operations. In the event that any sale or transfer agreements or options have been executed prior to the submission of the plan to the department, the cleanup plan shall be transmitted, by certified mail, prior to the transfer of operations, to all parties to any transaction concerning the transfer of operations, including purchasers, bankruptcy trustees, mortgagees, sureties, and financers;
The foregoing statutory language establishes certain preconditions which the owner must satisfy prior to delivery of a deed or other document transferring title. The event in this case which starts the cleanup time clock running is "the execution of an agreement of sale ... to purchase" the industrial realty. N.J.S.A. 13:1K-9b.
Independent of the language in N.J.S.A. 13:1K-9b, though consistent therewith, we are convinced that unless the contract of sale permits the seller to rescind based on ECRA requirements, and the present contract does not afford the sellers such an option, as between the seller and buyer, there is no reason *592 why the doctrine of equitable conversion should not be invoked. That concept was "created to assure justice between the parties to a real estate transaction." In re Estate of Houghton, 147 N.J. Super. 477, 485, 371 A.2d 735 (App.Div. 1977), aff'd, 75 N.J. 462, 383 A.2d 713 (1978). It is based on "the principle that equity regards things which are directed to be done as having actually been performed where nothing intervened which ought to prevent such a performance." Fidelity-Philadelphia Trust Co. v. Harloff, 133 N.J. Eq. 44, 56, 30 A.2d 57 (Ch. 1943). Under the doctrine of equitable conversion, upon execution of the contract of sale, an equitable transfer occurs. At that point, the defendants-buyers, in contemplation of equity, became the real owners, Coolidge & Sickler, Inc. v. Regn, 7 N.J. 93, 98, 80 A.2d 554 (1951); Marion v. Wolcott, 68 N.J. Eq. 20, 22, 59 A. 242 (Ch. 1904), subject to the sellers' ECRA responsibilities and a lien for the unpaid purchase price. See Roselin v. Roselin, 208 N.J. Super. 612, 617, 506 A.2d 789 (App.Div. 1986); Gallicchio v. Jarzla, 18 N.J. Super. 206, 211-212, 86 A.2d 820 (Ch.Div. 1952).
Next, we address the issue of whether specific performance was a proper remedy given the factual findings made by the trial judge. "Under long established equity principles, a contract for the sale of real property is specifically enforceable by the purchaser." Pruitt v. Graziano, 215 N.J. Super. 330, 331, 521 A.2d 1313 (App.Div. 1987). See also Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 113, 581 A.2d 893 (App.Div. 1990). Specific performance is, nonetheless, a discretionary remedy resting on equitable principles. Stehr v. Sawyer, 40 N.J. 352, 357, 192 A.2d 569 (1963). ECRA does not forbid a court from allowing "a proper equitable remedy," Dixon, supra, 122 N.J. at 234, 584 A.2d 797, such as specific performance if it can "do more perfect and complete justice." Fleischer v. James Drug Stores, 1 N.J. 138, 146, 62 A.2d 383 (1948). The trial judge concluded that the purchasers were entitled to specific performance because their conduct was fair, just and reasonable. Unlike the sellers', the purchasers' conduct *593 was not sharp and they did not seek an unfair advantage. Barry M. Dechtman, Inc. v. Sidpaul Corp., 89 N.J. 547, 551-552, 446 A.2d 518 (1982). Furthermore, the trial judge made all the findings essential to support the judgment granting specific performance.
Contrary to plaintiffs' assertions, defendants were not limited to the remedy of rescission. While the contract granted defendants the unilateral right of rescission as an election of remedies, the contract did not purport to diminish or dislodge other equitable remedies which our law has conferred upon a purchaser of realty. Dixon generally acknowledges that a purchaser has the right not only to rescind the contract, but the purchaser is also free to seek other equitable relief or monetary damages if the seller unreasonably fails to comply with ECRA. Dixon, supra, 122 N.J. at 232-233, 584 A.2d 797.
Even though the amended contract of sale provided that ECRA applied to the sale, the contract, nonetheless, did not specify or limit how much the sellers were required to spend to satisfy ECRA. When a contract for the sale of industrial realty is silent as to how much the seller is obligated to spend to comply with ECRA, by implication the seller is obligated to spend a reasonable sum in relation to the selling price listed in the contract. See Dixon, supra, 122 N.J. at 233, 584 A.2d 797; Becker v. Sunrise at Elkridge, 226 N.J. Super. 119, 129, 543 A.2d 977 (App.Div. 1988).
We hold that when the April 12, 1985 contract was amended on February 20, 1986 to acknowledge that ECRA applied, a "sale or transfer" occurred within the contemplation of ECRA. Under the ECRA scheme, execution of the contract of sale is the event in this case which triggers the sellers' obligation for remediation of the realty to be conveyed pursuant to the contract. To hold otherwise would mean the parties would be forced to conduct a closing and then hold everything in escrow pending disposition by the DEPE of the seller's obligations pursuant to ECRA. In that vein, the sellers contention *594 that a seller's ECRA obligations are not triggered until delivery of a deed at closing, would mean that a buyer could not specifically enforce a contract of sale for industrial realty even where the cleanup costs are minimal in comparison to the selling price of the realty. We find no basis to believe the Legislature intended such an absurd result.
Here, the trial judge carefully determined that plaintiffs acted in bad faith, thereby making them ineligible for any equitable relief. In contrast, defendants acted in good faith, and they were granted equitable relief properly. The judge limited the sellers' ECRA responsibility to less than 9% of the selling price. That was most reasonable under the Dixon standard, 122 N.J. at 233, 584 A.2d 797, which we have applied.[1]
The judgment is affirmed.
NOTES
[1] A word of caution is in order. We do not suggest that to be reasonable, the cleanup costs cannot exceed 10% of the selling price where the contract places no upper limit on the cleanup responsibility.